UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:13-cv-10335-RGS

AIDA CABRERA

v.

SOVEREIGN BANK

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

May 7, 2014

STEARNS, D.J.

Pro se plaintiff Aida Cabrera is one of the too many Americans who lost their home in the Great Recession. She blames her plight on defendant Sovereign Bank, which she alleges "compelled her to give up her home and agree to [an] unfair short sale." Compl. ¶ 8. Sovereign Bank, n/k/a Santander Bank, N.A. (Santander),[1] now moves for summary judgment pursuant to Fed. R. Civ. P. 56(a). Because Cabrera has failed to summons sufficient evidence to support her claim, the motion will be granted.

BACKGROUND

---

[1] On January 30, 2009, Banco Santander, completed its purchase of Sovereign Bank. On January 26, 2012, Sovereign Bank changed its name to "Sovereign Bank, N.A." – and on October 17, 2013, to "Santander Bank, N.A."

The facts viewed in the light most favorable to Cabrera as the non-moving party are as follows. On January 8, 2004, Cabrera and her mother, Eulalia Polanco, purchased 270 Andover Street in Lawrence, Massachusetts (Property) for $283,000. Mother and daughter granted a mortgage on the Property to Wells Fargo Home Mortgage, Inc., as security for a $374,760 promissory note. On January 13, 2004, Cabrera and Polanco executed a Quitclaim Deed transferring the Property to Cabrera as the sole owner. On December 20, 2005, Cabrera negotiated a $280,000 "cash-out" refinancing of the Property with Santander. In return, Cabrera granted Santander a mortgage on the Property.

By January of 2008, Cabrera was unable to work and her only sources of income were her monthly Social Security and workers' compensation benefits. Financially stressed, she submitted a loan modification application to Santander. On February 10, 2008, after determining that Cabrera's monthly mortgage and household expenses exceeded her income, Santander denied the application. In October of 2008, Cabrera missed her first mortgage payment. Over the next two years, Cabrera continued to miss mortgage payments, while repeatedly asking Santander to no avail for a loan modification.

On March 22, 2010, Orlans Morgan PLLC (Orlans Moran), a law firm retained by Santander, notified Cabrera by mail that it had begun foreclosure proceedings. With the notification, Orlans Moran included information suggesting alternatives to a foreclosure sale, including the option of a prior sale of the Property by Cabrera herself.[2] Shortly after receiving the March 22, 2010 letter, Cabrera entered into an exclusive listing agreement with realtor RE/MAX. On April 30, 2010, Cabrera signed an agreement with Francis Villa Javier for purchase of the Property for $175,000. Shortly thereafter, Javier withdrew his offer.

On June 17, 2010, Orlans Moran sent Cabrera a "Notice of Intention to Foreclose and Deficiency After Foreclosure of Mortgage," which listed an auction date of July 22, 2010. On July 7, 2010, Cabrera filed a preemptive voluntary petition for Chapter 7 bankruptcy, which served to cancel the sale. Thereafter, Cabrera renewed her efforts to sell the Property. On January 19, 2011, Santander approved a contract of sale between Cabrera and Michael J. Farris for $140,000. On January 21, 2011, Cabrera executed a settlement statement and a quitclaim deed transferring the Property to Farris.

---

[2] The notice stated as follows: "Sell Your Property: This means that your property would be sold by you prior to the foreclosure. Approval is required if your sale does not pay off your lender in full." Def.'s Ex. 12 – Dkt. #23.

On February 21, 2013, Cabrera filed this Complaint alleging that the short sale was "unfair" and that she had been "compelled to give up her home" after Santander "start[ed] the foreclosure process" and "while [her] loan modification was in process." Compl. ¶¶ 6, 8. Cabrera also alleges that she "served a demand letter" on Santander and that it "failed to make a reasonable settlement offer." *Id.* ¶¶ 9-10. On February 25, 2013, Santander moved for a more definite statement. On June 24, 2013, the court denied Santander's motion after finding that Cabrera had adequately pled a claim under Mass. Gen. Laws, ch. 93A (Chapter 93A). The court authorized a six-month discovery period. On January 31, 2014, Santander filed for summary judgment. The parties' briefing was completed on March 24, 2014.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735

(1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id.* A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir. 1995).

In support of her Chapter 93A claim, Cabrera contends that Santander "promise[d]" her that "as the process of the loan modification is on[]going," Santander would "work with [her] as [it] had information that [her] income set back is temporary," and that she would "get back on [her] feet after some time." Pl.'s Opp'n at 3. Cabrera asserts that despite these soothing words, Santander pressured her into the short sale of her home. Cabrera also maintains that after receiving her Chapter 93A demand letter on September 16, 2012, Santander "failed to make [a] reasonable offer to settle." *Id.* ¶ 10.

To prevail on her Chapter 93A claim, Cabrera must demonstrate that Santander engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in business transactions." Mass. Gen. Laws ch.

93A, § 2. "A practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (2013), quoting *Kenda Corp. v. Pot O'Gold Money Leagues,* 329 F.3d 216, 234 (1st Cir. 2003). The boundaries of what qualifies as conduct violating Chapter 93A is a question of law, not fact. *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 503 (2011).

What is missing is any evidence that anything Santander did or said was unfair or deceptive. Santander consistently informed Cabrera between 2008 and 2010, that because her income did not match the amount of her loan payments, it would not modify her mortgage. There was nothing untrue or legally unfair about this statement. Santander also provided Cabrera with the appropriate notice of the foreclosure proceedings and explained her responsibility for any deficiency. She was also given advice on alternatives to foreclosure that she could pursue (subject to Santander's approval). Moreover, Cabrera admits that there were no threats or overtly coercive acts by Santander influencing her decision to sell the Property to Farris. To the contrary, she testified at her deposition that the agreement with Farris was completely voluntary on her part.

Q:  Did anyone force you to sign this document
      (Settlement Statement) at the closing?
A:  No.

Q:  Did anyone threaten you if you didn't sign this document?
A:  No
.

Def. Ex. 6 at 57.

Q:  Do you recognize this document (Quitclaim Deed)?
A:  Yes.

Q:  Is that your signature at the bottom?
A:  Yes.
. . .

Q:  And this document was signed at the closing?
A:  Yes.

Q:  And you signed this document voluntarily?
A:  Yes.

Q:  No one forced you to sign it?
A:  No.

Q:  No one threatened you if you didn't sign it?
A:  No.

*Id.* at 57-58.

What is left is Santander's refusal to grant Cabrera a loan modification.  It is well-settled that a bank has no obligation under a note or mortgage to modify a loan.  "Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults."  *Peterson v. GMAC Mortg.,*

*LLC*, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011), citing *Carney v. Shawmut Bank, N.A.*, 2008 WL 4266248, at *3 (Mass. App. Ct. 2008) (per curiam).  It follows as a matter of law that the refusal to enter into a loan modification cannot constitute an unfair or deceptive act under Chapter 93A.  This is logic.  If the mere breach of contract does not amount to a violation of Chapter 93A, *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 100-101 (1979), one is hard pressed to explain how the refusal to enter into a contract in the first place could ever become one.

Finally, Aida Cabrera contends that documents that Santander has submit in support of its summary judgment motion are "incomplete" and the attached affidavit of counsel James Kessler is "not base[d] on personal knowledge."  Pl.'s Opp'n at 4.  She has failed to raise a genuine issue of authenticity as to any of Santander's documents.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by . . . Fed. R. Evid. 901(b) (providing ten approaches to authentication) [or] Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation.").

ORDER

For the foregoing reasons, defendant's motion for summary judgment is <u>ALLOWED</u> with prejudice.  The Clerk will enter judgment for Santander and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE